UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:07CV-00080-EHJ

STEPHANIE I. BARNETT					PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security				DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

### BACKGROUND

Before the Court is the complaint (DN 1) of Stephanie I. Barnett ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 9) and the defendant (DN 10) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 8) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered August 6, 2007 (DN 8), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits on April 26, 2005 (Tr. 64-68). Plaintiff alleged that she became disabled on January 26, 2005 as a result of sleep apnea and asthma (Tr. 64, 125, 126). Administrative Law Judge James Craig ("ALJ") conducted a hearing

on August 8, 2006 in Owensboro, Kentucky (Tr. 451). The plaintiff was present and represented by attorney Russ Wilkey. Also present and testifying was John Grenfell as a vocational expert (Tr. 451).

In a decision dated October 23, 2006, the ALJ utilized the five-step sequential evaluation process for evaluating adult disability claims (Tr. 15-24). At the first step, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date (Tr. 17). At the second step, he determined that plaintiff's sleep apnea, asthma, obesity, generalized arthritis, status-post ankle fracture, and depression are "severe" impairments within the meaning of the regulations (Tr. 17). At the third step, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment in Appendix 1 (Tr. 17).

At the fourth step, the ALJ determined that plaintiff has the residual functional capacity to perform less than a full range of work at the sedentary level due to postural and non-exertional limitations[1] (Tr. 17-23). Based on testimony from the vocational expert, the ALJ

---

[1]Specifically, the ALJ found as follows:

> "The claimant can lift and carry a maximum of 10 pounds occasionally and lesser weight frequently. She can stand and/or walk, a combined total of about two hours per day, and sit about six hours per day. She can never kneel, crouch or crawl. She can never be exposed to extreme cold, heat, wetness and/or humidity. She can never be exposed to moving/mechanical parts, electrical shock, exposed heights or noxious fumes or odors. Aside from these restrictions, she has no other postural or environmental limitations. She has no significant manipulative, visual or communicative limitations. Because of her mental impairment, she cannot carry out detailed instructions or make complex decisions. She is limited to only intermittent/occasional contact with co-workers and the general public."

found plaintiff does not have the residual functional capacity to return to her past relevant work (Tr. 23).

At the fifth step, the ALJ considered the vocational expert's testimony, plaintiff's residual functional capacity, her age, her education, and her past work experience (Tr. 23-24). The ALJ determined that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 24). Based on the above findings, the ALJ concluded that plaintiff has not been under a "disability," as defined in the Social Security Act, from January 26, 2005 through October 23, 2006, the date of the decision (Tr. 24).

Plaintiff timely filed a request for review by the Appeals Council (Tr. 10, 11). The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-8).

## CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

---

(Tr. 17, original text in bold print).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-8). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the

challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

At the fourth step, Plaintiff challenges the ALJ's residual functional capacity findings related to her obesity (DN 9). Specifically, plaintiff argues the ALJ's findings are not supported by substantial evidence in the record because her treating physician did not prescribe weight loss treatment (DN 9). Additionally, plaintiffs argues the ALJ's findings do not comport with Social Security Ruling 02-1p which sets forth the applicable law in obesity cases (DN 9).

The regulations clearly indicate that a claimant must follow "treatment prescribed" by his or her physician "if this treatment can restore" his or her "ability to work." 20 C.F.R. § 404.1530(a). If a claimant "does not follow the prescribed treatment without good reason," he or she will not be found disabled. 20 C.F.R. § 404.1530(b). The regulations also provide a general explanation as well as examples of what are acceptable reasons for failing to follow prescribed treatment. 20 C.F.R. § 404.1530(c).

At the fourth step, the ALJ noted that Social Security Ruling 82-59 sets forth the Administration's policy on a claimant's failure to follow prescribed treatment (Tr. 20). The ALJ then wrote as follows:

> "In part, individuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment."

5

(Tr. 20). The ALJ has accurately expressed what amounts to the Administration's general policy. Social Security Ruling 82-59, 1982 WL 31384, *1 (1982).

The Administration has, however, expressed limitations on this general policy when dealing with disability claims involving obesity. Social Security Ruling 02-1p. In pertinent part, Social Security Ruling 02-1p reads:

> "14. How Do We Evaluate Failure To Follow Prescribed Treatment in Obesity Cases?
>
> Before failure to follow prescribed treatment for obesity can become an issue in a case, we must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s). Our regulations at 20 CFR 404.1530 and 416.930 provide that, in order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment. We will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits.
>
> SSR 82-59, 'Titles II and XVI: Failure To Follow Prescribed Treatment,' explains that we will find failure to follow prescribed treatment only when all of the following conditions exist:
> • The individual has an impairment(s) that meets the definition of disability, including the duration requirement, and
> • A treating source has prescribed treatment that is clearly expected to restore the ability to engage in substantial gainful activity, and
> • The evidence shows that the individual has failed to follow prescribed treatment without a good reason.
>
> If an individual who is disabled because of obesity (alone or in combination with another impairment(s)) does not have a treating source who has prescribed treatment for the obesity, there is no issue of failure to follow prescribed treatment.
>
> The treatment must be prescribed by a treating source, as defined in our regulations at 20 CFR 404.1502 and 416.902, not simply recommended. A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment.
>
> When a treating source has prescribed treatment for obesity, the treatment must clearly be expected to improve the impairment to the extent that the person will not be disabled. As noted in question 13, the goals of treatment for obesity are generally modest, and treatment is often ineffective. Therefore, we will not find failure to

6

> follow prescribed treatment unless there is clear evidence that treatment would be successful. The obesity must be expected to improve to the point at which the individual would not meet our definition of disability, considering not only the obesity, but any other impairment(s).
>
> Finally, even if we find that a treating source has prescribed treatment for obesity, that the treatment is clearly expected to restore the ability to engage in SGA, and that the individual is not following the prescribed treatment, we must still consider whether the individual has a good reason for doing so. In making this finding, we will follow the guidance in our regulations and SSR 82-59, which provide that acceptable justifications for failing to follow prescribed treatment include, but are not limited to, the following:
> • The specific medical treatment is contrary to the teaching and tenets of the individual's religion.
> • The individual is unable to afford prescribed treatment that he or she is willing to accept, but for which free community resources are unavailable.
> • The treatment carries a high degree of risk because of the enormity or unusual nature of the procedure.
>
> In this regard, most health insurance plans and Medicare do not defray the expense of treatment for obesity. Thus, an individual who might benefit from behavioral or drug therapy might not be able to afford it. Also, because not enough is known about the long-term effects of medications used to treat obesity, some people may be reluctant to use them due to the potential risk.
>
> Because of the risks and potential side effects of surgery for obesity, we will not find that an individual has failed to follow prescribed treatment for obesity when the prescribed treatment is surgery."

Social Security Ruling 02-1p, 2000 WL 628049 *9-*10 (September 12, 2002).

Here, despite recognizing that plaintiff's disability claim involves obesity, the ALJ did not mention Social Security Ruling 02-1p in the administrative decision. Notwithstanding, the ALJ's evaluation of plaintiff's obesity at the second, third, fourth and fifth steps does comport with Social Security Ruling 02-1p.

Dr. O'Bryan is plaintiff's treating pulmonary specialist (Tr. 331-332, 359-371, 447-448). He diagnosed plaintiff with severe obstructive sleep apnea and prescribed CPAP therapy for the condition (Tr. 331, 363, 366). Dr. O'Bryan also recommended weight loss because her

7

obesity affected her sleep apnea (Tr. 331-332, 359-371). As plaintiff continued to gain weight and her BMI climbed to 50 and then 51, Dr. O'Bryan recommended she consider bariatric surgery (Tr. 331-332, 359-371). In sum, Dr. O'Bryan did not prescribe weight loss treatment, he made recommendations regarding weight loss.

Clearly, substantial evidence in the record does not support the ALJ's finding that plaintiff failed to follow weight loss treatment prescribed by Dr. O'Bryan (Tr. 18). However, substantial evidence in the record supports the ALJ's finding that plaintiff is not disabled because of her obesity, alone or in combination with her other impairments (Tr. 20-21).[2] Under the applicable law there is no issue of failure to follow prescribed treatment when, as here, the claimant is not disabled because of obesity (alone or in combination with other impairments) and the treating physician has not prescribed treatment for obesity. Social Security Ruling 02-1p, 2000 WL 628049, *9 (September 12, 2002). In sum, the errors of which plaintiff complains are harmless in light of other findings the ALJ made at the fourth step in connection with determining plaintiff's residual functional capacity.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for

---

[2]Specifically, the ALJ found:

"Even with the claimant's failure to follow prescribed treatment, without good cause, the evidence does not support a finding that the combined severity of her impairments renders her disabled from all work activity."

(Tr. 20-21).

8

the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:	Counsel